IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IOU CENTRAL, INC., | : | |
| d/b/a IOU FINANCIAL, INC | : | |
| | : | |
|     Plaintiff, | : | |
| vs. | : | Case No. 1:20-cv-02367-MLP |
| | : | |
| SHORE APPLIANCE ET AL | : | |
| | : | |
|     Defendants. | : | |

## PLAINTIFF IOU'S RESPONSE TO MOTION TO DISMISS OR STAY [DOC 3] AND CROSS MOTION FOR RELATED INJUNCTIVE RELIEF

IOU responds to the Motion to Dismiss or Stay of Defendants Gary and Donna Larmore and Shore Appliance [Movants] [Doc 8]. IOU files its Cross Motion for Related Injunctive Relief, demonstrating this case is not subject to dismissal or stay although their State Court Case should be stayed by injunctive relief under the All Writs and Anti-Injunction Acts detailed below.

## STATEMENT OF FACTS

1.     The following facts are alleged in the Complaint [CC] and taken as true for the purposes of the Motion to Dismiss.

2.     The parties are diverse for which subject matter and personal jurisdiction and venue are undisputed by Defendants. [CC ¶ 1-7]

3.     Defendants sought and applied for a commercial loan [Loan] with

1

IOU, in part, to satisfy their prior debt. They executed a Note for $166,500 evidencing the Loan, with a Security Agreement, securing Shore's property, assets and proceeds as collateral for the Loan, to encompass all recipients of the Funds. Gary and Donna Larmore executed Guaranties of the Note and Security Agreement [Instruments], also intended to encompass all recipients of the Funds and their property such as the Defendants. [CC ¶ 8-12]

4.     The Note and Guaranties include *mandatory* Georgia choice of law and forum clauses, plus the Security Agreement, per precise copies attached as **Exhibit 1, Exhibit 2** and **Exhibit 3**. [See Note, ¶ 21, 23, 24, Guaranty ¶ 11]

5.     Defendants agreed to an Electronic Debit Agreement, to debit loan payments from their account to IOU, approving disbursement of the Funds which they received with lenders of their debt satisfied by IOU. [CC ¶ 13-15]

6.     IOU relied on its security interest, repayment of the Funds and their equitable subrogation in advancing them to Defendants. [CC ¶ 16, ¶ 23]

7.     Defendants breached the Instruments, were agents of each other on the Loan, did not intend to repay the Funds, which they conspired to obtain from IOU. They are jointly liable for the Loan.  [CC ¶ 18-22]

8.     IOU's Security Agreement attached to property, assets and proceeds of Defendants, such as secured by loans satisfied by IOU per equitable

subrogation, which holds the Instruments/debt exceeding $76,000. [CC ¶ 21-29]

9.     Defendants breached the Instruments or did not satisfy IOU's claims as to the Funds, which they obtained, retained and should repay. [CC ¶ 30-36]

10.     On 6/3/20, IOU filed suit [Doc 1], naming the Defendants for which summons issued. [Doc 2], served with process on 6/8/20. [Doc 16-19]

11.     IOU seeks this relief [Doc 1] (a) Count I, equitable and declaratory relief of its security interest in property of all parties, including equitable subrogation and reformation [CC ¶ 37-44] (b) Count II for Breach of Instruments [CC ¶ 45-50] (c) Count III for Breach of Fiduciary Duty [CC ¶ 51-58] (d) Count IV for Quantum Meruit/Unjust Enrichment [CC ¶ 59-64] (d) Count V for Equitable Lien/Mortgage [AC ¶ 65-69] (e) Count VI for Constructive Trust [AC ¶ 70-74]; (g) Count VII for Attorney's Fees [AC ¶ 75-78]

12.     Defendants Gary Larmore, Donna Lamore and Shore filed an Answer, Crossclaim and Counterclaim, seeking to essentially rescind the Instruments and recoup the monies paid to IOU under the Instruments, with a related Crossclaim against Duane Lamore. [Doc 11, p. 17-32]     Oddly, Movants moved [Doc 8] to dismiss/stay this matter, based upon a Maryland State Court matter, _not_ served upon IOU, seeking the _same_ relief as their Counterclaim/Cross claim, _contrary_ to the forum clauses in the Note and Guarantees. [Doc 8-1, p. 1-11]

13.    The Motion should be denied and the State Court Case stayed.

## **MEMORANDUM**

The Court is requested to take notice of these matters per Fed. R. Evid. 201.

## I.    **Movants must Litigate in Georgia to which they Consented by Filing their Counterclaim, requiring denial of the Motion to Dismiss or Stay.**

The Answer and Motion made boilerplate references to defenses of personal jurisdiction and venue, but never argued them, now waived, particularly as Movants filed their Counterclaim. ***Diamond Crystal v. Food Movers,*** 593 F.3d 1249, 1256 N 5 (11th Cir. 2010) [defendant did not waive personal jurisdiction defense by filing answer, which preserved personal jurisdiction defense and *then* filed counterclaim *after* denial of motion to dismiss on personal jurisdiction.]

The Motion is baseless, misquoting the first filed rule [Doc 8, p. 7-10] only applicable to competing *federal* cases, *not* to a *federal case and a state court case*. "As between state and federal courts, the rule is that pendency of an action in the state is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." ***Ambrosia v. Pagés Morales***, 368 F.3d 1320, 1328, (11th Cir. 2004) The State Court Case is not served yet upon IOU or even the other Defendants in that action, filed less than a week before this suit. The Motion frivolously argue venue is improper per 15 U.S.C. §1692 [FDCPA] inapplicable to this *commercial* loan. [Doc 8, p. 10] ["FDCPA limits its reach to obligations to pay

4

arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services"] ***Hawthorne v. Mac Adjustment***, 140 F.3d 1367, 1371 (11th Cir 1998) The Motion should be denied, which also cites no basis for attorney's fees [Doc 8, p. 11] an argument abandoned by Movants per L.R. 7.1.

The Court also has jurisdiction over the property at issue, against which IOU seeks to impose equitable liens and/or constructive trusts on the interests of the Defendants. ***Massie v. Watts***, 10 U.S. 148-59 (1810); ***Keller v. Millice***, 838 F. Supp. 1174 (S.D. Tex. 1993) (citing ***Massie***). So long as the court has personal jurisdiction over the defendant, that party's equitable rights in the property may be tried in a court *outside* the state where the property is sited. As the Court held: "[I]n a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree." ***Massie***, 10 U.S. at 159. *See also* ***Fall v. Eastin***, 215 U.S. 1, (1909) [A court of equity having authority to act upon person may . decree a conveyance of land situated in another jurisdiction, and even in a foreign country, and enforce the execution of the decree by process against the defendant. . [I]ts decree is made effectual by coercion of defendant." ***Keller v. Millice***, 838 F. Supp. 1173-744 (S.D. Tex. 1993) (action for constructive trust on property transitory citing ***Massie***) ***Mandley v. Backer***, 121 F.2d 875, 876

(D.C. Cir. 1941) (court could make equitable decree affecting real property outside jurisdiction because personal jurisdiction was present); ***Miller v. Nickel***, 149 F. Supp. 463 (N.D. Cal. 1957) (court could exercise equitable jurisdiction over property to impose constructive trust). The Court has jurisdiction.

## II.     The Notes and Guarantees provide for Georgia law and jurisdiction, again requiring denial of the Motion to Dismiss or Stay.

As shown here, the Instruments are governed by Georgia choice of law and forum clauses. [See Note/Guarantees above] No party sought to invoke arbitration in the Note or Guarantees, now waived. "Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right." ***Morewitz v. West of England Ship Owners,*** 62 F.3d 1356, 1365 (11th Cir. 1995). A party waives the right to compel arbitration when they "substantially participate in litigation to a point inconsistent with an intent to arbitrate and participation results in prejudice to the opposing party." ***Id.*** at 1366

Furthermore, Movants ignore the valid forum selection clauses in the Note and Guarantees to which this rule is subject. ***In re Ricoh Corp.***, 870 F.2d 570, 573 (11th Cir. 1989) [court need not defer to first filed forum in the face of a clearly applicable forum selection clause: "[S]uch deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of

which are vital to our judicial system." Any dispute over the Note and Guaranties must be resolved in Georgia.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." ***Atlantic Marine v. D. Court for W. Dist. Tex.***, 571 U.S. 49, 60, (2013). Although ***Atlantic Marine*** considered the enforceability of a forum-selection clause under 28 U.S.C. § 1404(a), the Court explained that § 1404(a) merely codified the doctrine of forum non conveniens "for the subset of cases in which the transferee forum is within the federal court system." ***Id***. "[B]ecause both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." ***Id.*** at 61.

Movants are bound to the forum clauses in the Instruments. Maryland is an improper venue for IOU, with no office or witnesses there. ***Greenfield v. Batesville***, LEXIS 32481 (S.D. Ohio 2008) [granted motion to dismiss for improper venue based upon forum selection clause and per 28 U.S.C. §1404, particularly as non-party witnesses were more than 100 miles from Ohio, whose attendance could not be compelled per Fed. R. Civ. P. 45 (b)(2)(B) and designated

forum familiar with designated law in contract] This case will turn, in part, on the interpretation of Georgia law as to the Note among other issues, as the Note includes a Security Agreement, encumbering all property, assets and proceeds of Defendant Shore, guaranteed by the other Defendants. ***Atlantic Marine*** provided the following approach for analyzing enforceability of a forum clause. As a general rule, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." ***Id.*** at 2. Unlike the situation where there is no forum-selection clause, *the plaintiff "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.*" ***Id***. at 64. *Plaintiff's subsequent choice of forum merits no weight*. ***Id***. at 63-64.

Second, a court must deem all factors relating to the private interests of the parties (such as the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive") as weighing "entirely in favor of the preselected forum." ***Id***. at 64, 62 n.6 (cit. omitted) While a court may consider factors relating to the public interest (such as "the administrative difficulties

flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law," *id*. at 64, 62 n.6 (alteration in original) (citation omitted) those factors will rarely defeat a transfer motion. *Id.* at 64.

The practical result is that a forum-selection clause "should control except in unusual cases." *Id*. at 64. This result is required, according to ***Atlantic Marine***, *because a forum-selection clause "represents the parties' agreement as to the most proper forum*." ***Id.*** at 63 (cit omitted. It "*may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place*." ***Id.*** at 66. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*. at 63 (citation omitted). *In short, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should a motion to enforce a forum-selection clause be denied. Id.* at 62.

***Atlantic Marine*** provides little guidance regarding what constitutes an "exceptional reason" or "extraordinary circumstances" in which courts should not give controlling weight to a valid forum-selection clause. Therefore, we turn to the Court's prior guidance on this issue in ***M/S Bremen v. Zapata Off-Shore***, 407 U.S.

1, (1972). **_M/S Bremen_** held a forum-selection clause was controlling unless the plaintiff made a strong showing that: _(1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court_." 407 U.S. at 15, 18.

Movants did not raise (1) fraud/overreaching as grounds to ignore the forum clauses (2) cited no strong public policy to ignore them and litigate in Maryland instead of Georgia and as there is a strong federal policy in favor of enforcement of such clauses as shown here. (3) Movants cited no grave difficulty or inconvenience with litigating in Georgia; who submitted to jurisdiction and venue by filing their Counterclaim, who instead seek to subject IOU to difficulty and inconvenience, contrary to the clauses. Regarding this last factor, the Court again held as follows:

> "Where the parties have agreed to a forum-selection clause, they "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." **_Atl. Marine_** at 64. _A court must dismiss a suit filed "in a forum other than the one specified in a valid forum-selection clause," even if it "makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate_." **_Id_**. at 66 n.8 (alteration in original) (citation omitted) "[W]hen the plaintiff has violated a contractual obligation by filing suit in a forum other than the one

specified in a valid forum-selection clause . . . dismissal would work no injustice on the plaintiff." *__Id__*.

Under *__Atlantic__*, courts must enforce a forum-selection clause unless the contractually selected forum affords plaintiffs no remedies whatsoever". *__Weber v. PACT__*, 811 F.3d 758, 774 (5th Cir. 2016); *see also* *__Barnett v. DynCorp__*, 831 F.3d 296, 308 n.14 (5th Cir. 2016). "It is the *availability* of a remedy that matters, not predictions of the likelihood of a win on the merits." *__Weber__*, 811 F.3d at 774. *__Sun__* at 1091-92. The Movants can seek their alleged remedies in their Counterclaim. Therefore, this Case should proceed.

## III. __Abstention is Inapplicable, again requiring denial of the Motion.__

Movants request the Court dismiss or stay this Case, pending resolution of the State Court Case, citing *no valid* basis for that relief as shown above [Doc 8, p, 7-11] The erroneous Motion argues (a) the State Court case, filed 5/22/20 should take precedence over this case, filed 6/3/20, based on their argument that 'jurisdiction attached first. [Doc 8, p. 8-9] However, this argument ignores the fact that this Case was __served__ on all Defendants by 6/8/20 but the State Case was not served, __precluding__ jurisdiction. (b) Movants then argue their unserved declaratory relief action will be decided first [Doc 8, p. 9, ignoring the fact that IOU also seeks declaratory relief in __Counts I, V and VI__ of its Complaint. [Doc 1] to enforce its secured interest in their property, assets and proceeds. Furthermore, __Movants also__

filed their Counterclaim here, seeking the same relief as the State Court Case. In ***Colorado River v. United States***, 424 U.S. 800, 818-20 (1976), the Court held that a federal court could abstain from an action if "(1) a parallel lawsuit was *proceeding* in state court, and (2) judicial-administration reasons so demanded abstention**."** ***Jackson-Platts v. Gen. Elec. Capital***., 727 F.3d 1127, 1140 (11th Cir. 2013). "Only the clearest of justifications," however, will warrant abstention**.** ***Colorado River***, 424 U.S. at 819; see also ***Noonan S. v. Volusia***, 841 F.2d 380, 383 (11th Cir.1988) ("dismissal of an action in deference to parallel state proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources"). The Court's inquiry must be "heavily weighted in favor of exercising jurisdiction." ***Ambrosia Coal v. Pages Morales***, 368 F.3d 1320, 1332 (11th Cir. 2004). (quoting ***Moses H. Cone v. Mercury Const. Co.***, 460 U.S. 1, 16, 103 S. Ct. 927 (1983)

Unaddressed by Movants is whether a *parallel* state action exists. ***Ambrosia***, 368 F.3d 1331. A parallel state action "is one involving substantially the same parties and substantially the same issues." ***Id***. If any "substantial doubt" exists about whether two cases are parallel, then abstention is not appropriate. ***Acosta v. James A. Gustino***, 478 F. App'x. 620, 622 (11th Cir. 2012) If the two cases are *not* parallel, then Colorado River abstention is inapplicable. ***AAR Int'l v. Nimelias***,

250 F.3d 510, 518 (7th Cir. 2001). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction . . . ." *Id*. at 520. As shown below, the cases are basically parallel, as IOU seeks to enforce the Instruments against Defendants [Doc 1] and Movants seek to rescind the loan and recover certain monies from IOU and cross-claim against Duane Lamore for related relief. [Doc 11, p. 17-32]

If the actions are parallel, under the second step of ***Colorado River***, a defendant must show "exceptional circumstances" justify abstention. ***Moses H. Cone v. Mercury Constr***, 460 U.S. 1, (1983). The Court must weigh these 6 (six) factors to determine whether abstention is proper:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) adequacy of the state court to protect the parties' rights. ***Brillhart v. Excess Ins. Co***., 316 U.S. 491, 495 (1942). ***Ameritas v. Roach***, 411 F.3d 1328, 1331 (11th Cir. 2005) [abstention on declaratory relief)

On Factor (1), in <u>Counts I, V and VI</u> of its suit, Plaintiff seeks declaratory and equity relief on the Instruments, including its security interest in the property of Movants, which can only be resolved here, where IOU brought its claims, precluding abstention under ***Brillhart*** and ***Ameritas***. ***Stonington v. Agric. & Labor Program***, LEXIS 14321 (S.D. Fla. 2009) [declined to abstain from declaratory

relief despite alleged parallel state court case] ***Hooters of Am v. Hoot Owl***, LEXIS 161843 (N.D. Ga. 2017) [denied motion for abstention]  Movants seek the *same* relief in their Counterclaim as the State Court Case, subjecting themselves to jurisdiction in Georgia, precluding  abstention. *The Instruments provide for sole and exclusive jurisdiction in Georgia*, not Maryland.

Factor (2) weighs in favor of jurisdiction in the Court as Movants submitted to the Court's jurisdiction by filing their counterclaim in this Case, while failing to serve IOU with the State Court Case. Factor (3) again weighs in favor of jurisdiction in the Court as again, all parties were properly served in this Case, appeared in this Case and asserted their claims in this Case. IOU proceeded with this case as it did with many other such loans, which is not vexatious or reactive.

Factor (4) again weighs in favor of jurisdiction in the Court in this Case, where IOU filed suit on its claims and served the Defendants, where Movants submitted to the Court's jurisdiction by filing their Counterclaim. Dismissal or stay of IOU's claims in this case would lead to the absurd result of IOU being forced to defend the Counterclaim in this case and litigate its claims in the State Case in which it was not served. Movants have only moved to stay or dismiss IOU's claims, *not their claims*. [Doc 8, p. 11] All claims and issues can and should be resolved in Georgia, the agreed-upon forum under the Note and Guarantees.

Factor (5) weighs in favor of abstention only if applicable state law is "particularly complex or best left for state courts to resolve." ***Jackson-Platts***, 727 F.3d at 1143. Abstention is inappropriate where case involves simple tort and contract principles. ***Noonan South v. Volusia***, 841 F.2d 380, 382 (11th Cir. 1988) State law here involves simple contract, tort, agency and possibly property law which Movants have not demonstrated as complex, which can be applied by either court, although the Instruments require application of *Georgia* law and forum This factor weighs against abstention.

Under Factor (6), this Court can protect the rights of IOU and all Defendants, in this Case, in which their claims are now at issue, while IOU was not yet served with the State Court Case, weighing against a stay. A stay is inappropriate when the parallel state action will not decide the issues in the federal case, even for state law claims. ***American Mfrs.***, 743 F.2d at 1525 (reversed stay where state action would not decide state law claims of plaintiff in federal diversity action; as claims were permissive and could not be compelled in state court)

This case should not be stayed/dismissed. The Instruments provide for Georgia forum and law. Movants waived objections and defenses to venue, personal jurisdiction, choice of law and to proceeding with this case by appearing in this action and prosecuting their Counterclaim. The Court should deny the

baseless Motion to Dismiss or Stay. This Case should clearly proceed, particularly if the state case is dismissed or stayed, pending resolution of this one.

**IV.**     **This Court First Obtained Jurisdiction over the Property/Parties.**

The Court has sole jurisdiction over the property assets and proceeds at issue in this Case as shown here. *See **Wabash v. Adelbert**,* 208 U.S. 38, 54 (1907) ["When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is withdrawn from the jurisdiction of all other courts…..a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine <u>all questions respecting title, possession or the control of the property</u>."] Again generally, state and federal courts may not interfere with or enjoin each other's proceedings, unless a court is exercising *in-rem or quasi in-rem* jurisdiction of property, which then has *exclusive* jurisdiction to proceed. ***Mutual Service v. Frit Industries***, 805 F. Supp. 919 (M.D. Ala. 1992) *citing **Donovan v. Dallas***, 377 U.S. 408, (1964) *citing **Princess Lida v. Thompson***, 305 U.S. 456, 465-68 1939). ***Colorado River***, 424 U.S. at 818. "[W]hen state and federal courts each proceed against the same *res*, the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other. ***Penn General***

*Cas. v. Pennsylvania,* 294 U.S. 195 (1935) *See also **Lida** supra.* This doctrine was also invoked in cases involving property, such as ships, railroad cars, personalty and trust funds and accounts. ***U.S. v. $79,123.49 in U.S. Cash and Currency***, 830 F.2d. 94, 97 (7th Cir. 1987) [see ***Lida** supra*] In ***Kline v. Burke Constr.***, 260 U.S. 226, 229-32, (1922), the Court held:

> "**It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is *in rem* the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached.**"

> "It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, **the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other**, until duty is fully performed, and the jurisdiction involved is exhausted. The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience." ***Covell v. Heyman***, 111 U. S. 176, The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. ***Merritt v. Steel Barge Co.***, 24 C. C. A. 530, 79

Fed. 228, 49 U. S. App. 85. The rule is limited to actions which deal either actually or potentially with specific property or objects.

> "Where a suit is strictly *in personam*, in which *nothing* more than a personal judgment is sought, there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined; and this because it neither ousts the jurisdiction of the court in which the first suit was brought, nor does it delay or obstruct the exercise of that jurisdiction, nor lead to a conflict of authority where each court acts in accordance with law. **_Stanton v. Embrey_**, 93 U. S. 548."

As shown here, IOU seeks *in-rem* and/or *quasi-in rem* relief as to the property, assets and proceeds at issue. "[*I*]*n rem* jurisdiction must encompass the right of the court originally asserting jurisdiction to control and dispose of the property." **_U.S. v. $270,000_**, 1 F.3d 1146, 1148 (11th Cir. 1993). *See also* **_Penn General Casualty v. Commonwealth_**, 294 U.S. 189, 195, (1935) (*in rem* action requires the court to have possession or control of the property "in order to proceed with the cause and to grant the relief sought"). In **_U.S. v. $270,000.00_**, 1 F.3d 1146, 1148(11th Cir. 1993), the Eleventh Circuit held:

> "Disposition of the property is an integral part of the court's ability to grant the relief sought in the proceedings. Thus, *in rem* jurisdiction must encompass the right of the court originally asserting jurisdiction to control *and* dispose of the property. **_Penn General_**, 294 U.S. at 195 (in *rem action* requires court to have possession or control of the property "in order to proceed with the cause and to grant the relief sought"). The United States asserts that the relief was granted when the state trial court ordered the evidence suppressed. At that time, however, no disposition of the res was ordered. Under Florida

law, "the court acquiring original jurisdiction is competent to hear and determine all questions respecting title, possession, and control of the property." ***Garmire v. Red Lake***, 265 So.2d 2, 4 (Fla.1972) (quoting ***Adams v. Burns,*** 172 So. 75, 79 (1936). Once jurisdiction is acquired, property in the court's custody "remain[s] there, by operation of law, until it is withdrawn by order of a competent court." ***Adams,*** 126 Fla. at 695, 172 So.at 79.

Here, the Court <u>first acquired and retained</u> jurisdiction after IOU filed and served this Case, in which the Movants appeared and filed their Counterclaim, completing jurisdiction over the parties and their property, assets and proceeds. The State Court cannot now determine any issues as the Loan in relation to the property, assets and proceeds of Movants, now under the Court's jurisdiction.

**V.** **The Court Should enjoin the Defendants from Prosecution of the State Court Case per its Jurisdiction over the Property, Assets and Proceeds of Defendants per the All Writs and Anti-Injunction Acts.**

A federal court may issue several types of injunctions.

**A.** **The All Writs Act justifies the Injunctive Relief.**

An injunction may be brought under the All Writs Act, 28 U.S.C. § 1651(a), as federal courts "<u>may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law</u>." See ***Med. Assoc. v. Wellpoint***, 756 F.3d 1222, 1233 (11th Cir. 2014), holding:

> "Federal courts have long recognized a court's power to effectuate its orders. The All Writs Act, 28 U.S.C. 1651(a), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective

jurisdictions and agreeable to the usages and principles of law." A federal court thus retains the power "to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." ***United States v. New York Tel. Co***., 434 U.S. 159 (1977), ***Henson v. Ciba***, 261 F.3d 1065, 1068 (11th Cir. 2001) (district court has the authority. . to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the court has retained jurisdiction."); ***Wesch v. Folsom***, 6 F.3d 1470 (11th Cir. 1993) (Act "empowers federal courts to issue injunctions to protect or effectuate their judgments").

"Federal courts may invoke the authority conferred by the Act to enjoin parties from prosecuting separate litigation to protect the integrity of a judgment entered in a class action and to avoid re-litigation of issues resolved by a class action. ***United States v. New York Tel. Co.,*** 434 U.S. at 172 ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."); ***Klay***, 376 F.3d at 1104 ("district court may issue an injunction under the Act to prevent prosecution of a state court action that had already been settled under the terms of a federal settlement agreement."); ***Wesch***, 6 F.3d at 1470 ("The district court here based its injunction on the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance and thereby avoid re-litigation of questions once settled between the same parties.") ***VMS v. Prudential***, 103 F.3d 1317, 1324 (7th Cir. 1996), overruled on other grounds by ***Envision Healthcare v. Preferred***, 604 F.3d 983 (7th Cir. 2010) ("Other circuits similarly approved a district court's use of the Act to litigants from frustrating or circumventing its orders.") ***White v. NFL***, 41 F.3d 402, 409 (8th Cir. 1994) ("While the Act is not an independent grant of jurisdiction, the ability to facilitate the present settlement by enjoining related suits of absent class members in ancillary to jurisdiction over the class action itself."); ***In re Y & A Grp. Sec. Litig.,*** 38 F.3d 380, 382-83 (8th Cir. 1994) ("All Writs Act makes plain that each federal court is sole

arbiter of how to protect its own judgments . . . It is this concept that underlies the related rule that the court which issues an injunction is the only one with authority to enforce it."); see ***Henson***, 261 F.3d at 1068 ("[A] district court has authority under the Act to enjoin a party to litigation from prosecuting an action in contravention of a settlement agreement over which court has retained jurisdiction.").

Also, a federal court has jurisdiction to enjoin a *first*-commenced state court case involving the same *res*. In ***United States v. Sid-Mars Restaurant***., 644 F.3d 270, 271 (5th Cir. 2011), the Fifth Circuit described the circumstances as follows:

> "Sid-Mar's Restaurant filed suit in state court demanding compensation from the State of Louisiana for commandeering of its real property following Hurricane Katrina. While the state litigation was pending, the United States initiated condemnation proceedings involving part of the same property in the Eastern District of Louisiana. To avoid potentially conflicting judgments, the United State sought a stay of the state court proceeding. The district court entered a stay, and Sid–Mar's appealed."

In affirming the federal court's stay of the prior state court proceedings, the Fifth Circuit emphasized the importance of preserving the federal court's ability to enter a meaningful judgment in a suit of which it had acquired jurisdiction. ***Id.***

## B.    The Anti-Injunction Act justifies Injunctive Relief.

28 U.S.C. § 2283, the Anti-Injuncti**o**n Act , provides a federal court "***may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or 1) where necessary in aid of its jurisdiction; or 2) to protect or effectuate its judgments."*** If one of the three

***specific exceptions contained in the Anti-Injunction Act permits an injunction,***

***[then] the All Writs*** *Act **grants a federal court the power to issue it.*** *See **Burr &***

***Forman v. Blair***, 470 F.3d 1019, 1027-28 (11th Cir. 2006). As the Court held:

> "The Anti–Injunction Act prohibits federal courts from enjoining state court actions unless the injunction falls within three exceptions to that general prohibition. 28 U.S.C. § 2283; ***Wesch v. Folsom***, 6 F.3d 1465, 1470 (11th Cir. 1993). One exception allows a district court to enjoin a state court action when doing so is "necessary in aid of its jurisdiction." 28 U.S.C. § 2283; ***Wesch***, 6 F.3d at 1470. To fall within that exception, the injunction must be necessary "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." ***Wesch***, 6 F.3d at 1470 (quoting ***Atl. Coast Line R.R. v. Brotherhood***, 398 U.S. 281 (1970). The exception is available to the district court both before and after its entry of final judgment. ***Battle v. Liberty***, 877 F.2d 877, 881 (11th Cir. 1989).

> ***Winchester v. Florida Farm Bureau,*** 427 Fed. Appx. 833, WL

2118714 at *2 (11th Cir. 2011). "Ordinarily a federal court issue an

injunction 'in aid of its jurisdiction' in only two circumstances: (1) removal

from state court; or, (2) the state court entertains an *in rem* action involving

a *res* over which the district court has been exercising jurisdiction in an *in

rem* action." ***Estate of Brennan v. Church of Scientology***, 645 F.3d 1267,

1272 (11th Cir. 2011) Enforcement of prior federal jurisdiction as to a *res*

before a state court was also acknowledged by the Supreme Court. ***Vendo

Co. v. Lekto-Vend,*** 433 U.S. 623, (1977).

Regarding the first exception, federal courts may enjoin state court proceedings "in aid of its jurisdiction" where: (a) "the district court has exclusive jurisdiction over the action because it was removed from state court; or, (b) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action." ***In re Bayshore Ford Trucks Sales***, 471 F.3d 1233, 1250-51 (11th Cir. 2006). An injunction in the second scenario is an acknowledgment that when a federal court is the first to acquire subject matter jurisdiction over an action *in rem*, "the effect is to draw to the federal court the possession or control, actual or potential, of the *res*." ***Bayshore*** at 1250-51 *citing* ***Kline v. Burke***, 260 U.S. 226, 229, (1922). Control over the *res* is fundamental to the district court's ability to render judgment in the case; i.e., a final decision with respect to the *res* necessarily affect the rights of all persons having an interest in the *res*. [T]he exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat the federal court's control. *Id.*; *see also* ***United States v. $ 270,000,*** 1 F.3d 1146, 1148 (11th Cir. 1993) ("State court and federal court cannot simultaneously exercise in *rem* jurisdiction over the same property."). The converse is also true. "[W]here the [*in rem*] jurisdiction of the state court has first attached,

the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction." ***Kline,*** 260 U.S. at 229.

### C. Both Acts are Applicable in this Case.

As held in ***Klay,*** supra, to obtain an injunction under the All Writs Act, a party "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior. As the Eleventh Circuit held: "Regarding pending proceedings, a court may enjoin almost any conduct which, if left unchecked, would have…the practical effect of diminishing the Court's power to bring the litigation to a natural conclusion." ***Klay*** at 1102 Here, Court first obtained *in-rem and/or quasi-in rem* jurisdiction over the parties and subject matter of this case, first served, requiring this relief. ***Winchester v. Fla. Farm,*** 427 Fed. Appx. 833, 837-38 (11th Cir. 2011) [upheld injunction enjoining state court cases seeking interpretation or enforcement of federal court order and settlement documents incorporated in the order] ***Bayshore v. Ford,*** 471 F.3d 1233, 1251, (11th Cir. 2006) [*upheld district court injunction barring state court plaintiffs from pursuing claims substantially similar to claims settled by final judgment in a federal antitrust class action lawsuit*]. Again, the Eleventh Circuit often enforces injunctions under the All Writs Act, in cases where the federal suit was *filed and served first*. ***Collegiate***

***v. Am. Cas. Co. of Reading,*** 713 F.3d 71, 78-81] [Plaintiff filed federal court declaratory judgment action as to insurance coverage: federal court properly enjoined defendant insurers from proceeding with insurance coverage determination in California district court, per the first filed rule.]

## CONCLUSION

Jurisdiction vested in the Court, which should adjudicate this matter under the valid forum clauses in the Instruments. IOU respectfully requests that (a) the Motion [Doc 8] be denied (b) Defendants be enjoined from prosecuting the State Court case under the Acts and (c) all other just and proper relief.

## CERTIFICATE OF COMPLIANCE

Per L.R. 5.1(C), I certify this document was prepared per L.R. 5.1(B) in Times Roman 14-point typeface.

## CERTIFICATE OF SERVICE

I certify a precise copy of this document was filed ECF on the below date sending notice to counsel of record.

Respectfully submitted this 14th day of July 2020.

By:     */s/Paul G. Wersant*
        Paul G. Wersant
        Georgia Bar No. 748341
        3245 Peachtree Parkway, Suite D-245
        Suwanee, Georgia 30024
        Telephone: (678) 894-5876
        Email: pwersant@gmail.com
        Attorney for Plaintiff
        File No. 148756