**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IOU CENTRAL, INC., | : | |
| d/b/a IOU FINANCIAL, INC., | : | |
| | : | Civil Action File No. |
| Plaintiff, | : | 1:20-cv-02367-MLB |
| v. | : | |
| | : | |
| SHORE APPLIANCE CONNECTION | : | |
| INC. A/K/A SHORE APPLIANCE | : | **Trial by a Jury of Twelve** |
| AND BEDDING CONNECTION, | : | **Demanded** |
| GARY W. LARMORE, DONNA LYNN | : | |
| LARMORE, DUANE G. LARMORE, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS GARY W. LARMORE, DONNA LYNN LARMORE, AND SHORE APPLIANCE CONNECTION, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS**

COME NOW Defendants Gary W. Larmore, Donna Lynn Larmore, and Shore Appliance Connection, Inc. ("Defendants"), and hereby file this Reply Brief in Support of their Motion to Dismiss, or in the alternative, Stay Proceedings, showing this Honorable Court as follows:

## I.   INTRODUCTION

As a threshold matter, Defendants filed their Motion to Dismiss, or in the alternative, Motion to Stay Proceedings on June 26, 2020. [Doc 8]. Pursuant to

1

Local Rule 7.1(B), IOU Central, Inc. ("IOU") was permitted to file a response in opposition "not later than fourteen (14) days after service of the motion." Here, IOU requested and received an extension of time to respond to Defendants' Motion, up to and including 7/13/2020. [Doc 20]. However, IOU still failed to file their response brief within this extended deadline. [Doc 22]. This noncompliance is grounds for this Court to decline to consider the untimely brief pursuant to Local Rule 7.1(F). But even considering IOU's untimely response, IOU has provided no basis for this Court to deny Defendants' Motion.

As discussed in detail in Defendants' initial brief in support, the Note and Guaranties at issue in this lawsuit were fraudulently entered into without any knowledge or assent of Gary W. Larmore, Donna Lynn Larmore, and Shore Appliance Connection, Inc. The criminality and forgery that were the basis of this void agreement were explained in detail to IOU *and their counsel,* months prior to this action being filed. Feigning ignorance, IOU now claims that the forgery established a binding agreement upon Defendants. Indeed, IOU even goes as far as to claim having no knowledge and never being served with the Maryland action, despite being served more than a month prior to the filing of IOU's brief in opposition with this Court.

As Defendants did not sign the agreement at issue, had no knowledge of its existence, and in no way assented to any of the agreement's terms and obligations, this agreement is void and unenforceable as to Defendants. IOU cannot now recover from Defendants, nor can it enforce arbitration and forum clauses that were purportedly "mandatory" terms of this void agreement. Moreover, Defendants are not deemed to have "consented to" venue and jurisdiction by the mere fact that Defendants have deigned to defends themselves from IOU's allegations. Defendants specifically raised these defenses in their initial brief in support, as well as in their Answers filed thereafter to ensure the counterclaims could not be deemed waived, as allowable by law. IOU cannot contort the facts in order to best suit their position. Overall, IOU has provided absolutely no valid basis for jurisdiction over Defendants, therefore the above-styled action must be dismissed.

Finally, IOU claims that the first-filed Maryland action should be stayed and that this Court should take jurisdiction over this matter. Separate from the fact that jurisdiction is wholly improper as to Defendants in Georgia, the factors that this Court may consider still demand the Maryland action proceed. Ironically, IOU goes as far as to claim that Maryland would be an inconvenient venue for them despite the fact that IOU intentionally issues high interest loans in Maryland, availing themselves of that jurisdiction. The true injustice would be requiring Defendants to

defend themselves in a venue with which they have no interaction that is over 600 miles from their residence and place of business. Therefore, and as will be described in greater detail below, the action before this Court must be dismissed, or at the least, stayed.

## II. ARGUMENT AND CITATION OF AUTHORITY

**A. This Action Must be Dismissed for Lack of Personal Jurisdiction.**

1. <u>Defendants have no meaningful contacts, ties, or relations with the State of Georgia.</u>

This Court may only exercise personal jurisdiction over Defendants if (1) the state long-arm statute confers personal jurisdiction; and (2) the exercise of such jurisdiction is consistent with due process. *Posner v. Essex Ins. Co., Ltd.,* 178 F. 3d 1209, 1214 (11th Cir. 1999). Neither such situation applies here.

Pursuant to Georgia's long-arm statute, a court of this state may exercise personal jurisdiction over Defendants if the Defendants:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or

engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) Owns, uses, or possesses any real property situated within this state;

O.C.G.A. § 9-10-91.

Similarly, due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 47 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). To satisfy the due process inquiry, IOU must demonstrate that Defendants have "minimum contacts" with the State of Georgia and that the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92 (1980). For "minimum contacts" with the State of Georgia to be established, Defendants must have purposefully availed themselves to the benefits and protections of Georgia in ways that would allow it to "reasonably anticipate being haled into court" in Georgia. *See Id.* at 297; *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

As described in Defendants' initial brief, Defendants Gary Larmore, Lynn Larmore, and Shore Appliance Connection, Inc. have done absolutely nothing to avail themselves of Georgia law. All the defendants named in this case are domiciled

and legally reside in the State of Maryland. Defendants are not registered to conduct business in Georgia and have no contacts in the state of Georgia, let alone "continuous and systematic" contacts so as to render the defendant "essentially at home" in Georgia in order to give rise to general personal jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011). No tort was committed by Defendants in the state of Georgia; moreover, Defendants had no knowledge of, no assent to, and no role in the agreement that IOU now wishes to enforce against them. Thus, there was no purposeful availment of Georgia law that could give rise to specific personal jurisdiction in this case. *Burger King*, 471 U.S. at 475. To be sure, the "purposeful availment" test is designed to ensure that a defendant does not have to defend itself in a state as a result of "random", "fortuitous" or "attenuated" contacts or because of the "unilateral activity" of another person. *Burger King*, 471 U.S. at 475. In the case at bar, IOU is attempting to do just that—force Defendants to defend themselves in a state they do not interact with, over 600 miles away, because of the unilateral activity of another person. As this flies in the face of the laws of this Court, Georgia's specific long-arm statute, and Defendants' right to due process, jurisdiction is improper in this Court.

## 2. The Arbitration and Forum Clauses Do Not Control.

Where a defendant challenges personal jurisdiction, the burden shifts to the plaintiff to produce specific evidence supporting jurisdiction. *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Here, IOU has wholly failed to produce specific evidence that would support jurisdiction in this case. Instead, IOU improperly argues that the arbitration and forum clauses of the forged agreement absolutely control the venue and jurisdiction of this action. This is wrong. Defendants did not sign this agreement. Defendants did not know about this agreement. Defendants did absolutely nothing that would assent to the creation of this agreement and the terms contained therein.

The law is clear that when a party did not sign and assent to an agreement, that agreement and the provisions contained therein are void. *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851 (11th Cir. 1992). In *Chastain*, the court explained that provisions such as arbitration and forum selection clauses are presumed sufficient when the contract is "admittedly signed by the contractual parties." *Id.* at 854. However, in cases where the contract at issue is never signed and assented to by one of the parties, there is a challenge to "the very existence of any agreement, including the existence of an agreement to arbitrate." *Id.* Indeed, the absurdity of

IOU's reliance on the arbitrary and forum selection clause was specifically addressed by the *Chastain* court in the following hypothetical:

> Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration.

*Id*. at 855.

IOU cannot violate Defendants' rights to due process and force them to defend this case in Georgia merely because a forged contract contained an arbitration and forum clause. None of the cases cited by IOU support such a proposition, indeed, all the cases cited in their brief emphasize parties' right to come to an agreement and to contract. The parties did not contract and come to an agreement in this case. Because Defendants did not sign this agreement and did not assent to the contract and provisions therein, they cannot be bound to the arbitration and forum clauses.

3. <u>Filing a Counterclaim Does Not Waive Defenses of Personal Jurisdiction and Venue.</u>

IOU alternatively argues that Defendants have consented to the jurisdiction of this Court by filing a counterclaim. In purported support of this contention, IOU cites a single case where a defendant was found to not waive their defenses of jurisdiction and venue. [Doc. 22, p. 4]. Here, Defendants specifically raised the

8

defenses of jurisdiction and venue in their initial brief in support of this Motion. [Doc. 8, pp. 10-11]. This was the initial document filed by Defendants in this suit, and it affirmatively raised the defenses of venue and jurisdiction. Following the filing of the initial motion, and out of an abundance of caution, Defendants then responded to the allegations of the Complaint and filed compulsory cross and counter claims against Defendant Duane Larmore and IOU. [Doc. 9, Doc. 10, Doc. 11]. In each of Defendants' Responsive Pleadings, the defenses of jurisdiction and venue were *again* raised with specificity. [Doc. 9, Doc. 10, Doc. 11]. Thus, Defendants have fully complied with Fed. R. Civ. P. 12(h)(1).

Contrary to IOU's assertions, the filing of a counterclaim with a defendant's answer does not waive the Rule 12 defenses. *Clark v. City of Zebulon*, 156 F.R.D. 684, 694 (11th Circ. 1993). As Defendants have already raised these defenses in *all* their initial pleadings, even "participat[ing] in discovery and in the process of moving the case toward trial [would] not constitute waiver of the defenses." *See Schnabel v. Wells*, 922 F.2d 726 (11th Cir. 1991). Rather, the courts in this jurisdiction have found that the filing of counterclaims and moving the case forward "constitute responsible representation by counsel who keeps its options open and who is proceeding in the interest of both his client and justice." *Clark*, 156 F.R.D. at 694. Therefore, for all of the reasons espoused above, and for those reasons set forth

in Defendants' initial brief, Georgia is an improper venue for this action, and this Court does not possess the requisite jurisdiction over Defendants Gary Larmore, Lynn Larmore, and Shore Appliance Connection, Inc.

### B. Abstention is Proper in this Case.

For many of the reasons already rebutted above, IOU next contends that this Court should not stay the instant action but should instead stay the Maryland action. [Doc. 22, p. 11]. In purported support of this claim, IOU relies on the six factors set forth by the courts in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942) and *Ameritas v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) adequacy of the state court to protect the parties' rights.

Brillhart, 316 U.S. at 495; Ameritas, 411 F.3d at 1331.

When discussing these six factors, IOU contends that abstention is not proper in this case for *only* the following three reasons: 1) the forged agreement contained an arbitration and forum clause; 2) Defendants somehow consented to jurisdiction in this Court by deigning to defend themselves in this case; and, 3) IOU was purportedly not served in the Maryland action. [Doc. 22, pp. 13-16]. Defendants would briefly respond to each of these three points in turn. In response to IOU's

first contention, and as described in detail above, the mere presence of an arbitration or forum clause in a contract that was not signed by the parties does not automatically create a binding agreement. *Chastain,* 957 F.2d at 854. Second, the filing of the counterclaim does not constitute waiver of previously raised affirmative defenses or constitute consent to jurisdiction. *Clark*, 156 F.R.D. at 694. And finally, IOU was served in the Maryland action more than one month prior to the untimely response filed by IOU in this case that incorrectly asserts otherwise. [Doc. 22].

Even solely considering each of the six factors articulated by IOU, the Court will still find that abstention is proper in this case, and the Maryland court must proceed with this dispute. The rationale is as follows:

*(1) Whether one of the courts has assumed jurisdiction over property:*

Contrary to IOU's assertions, neither court has assumed jurisdiction over property in this case. Moreover, the entirety of the property at issue is located in Maryland and will only be subject to the Maryland courts. Thus, the forum that is over 600 miles closer to the relevant witnesses and property should adjudicate this case.

*(2) The inconvenience of the federal forum:*

For the reasons cited above, defending this case in Georgia when Defendants have no contacts with this State is entirely improper. Rather, IOU has explicitly

consented to the jurisdiction of the Maryland courts by offering, approving, and collecting on high interest loans in the state of Maryland. IOU cannot benefit from the state of Maryland and then claim inconvenience when haled into court there.

*(3) The potential for piecemeal litigation:*

Here, there is an incredible risk for piecemeal litigation in this matter. This multi-million-dollar fraud and forgery scheme covers multiple lenders and victims across a number of states. The federal and Maryland state authorities are involved, and Maryland is the central hub for all the illicit activity and location of the property at issue. Allowing this case to proceed tangentially to the criminal and civil proceedings in Maryland will absolutely run the risk of inconsistent, piecemeal litigation.

*(4) The order in which the fora obtained jurisdiction:*

The Maryland action was filed prior to this lawsuit, IOU was properly served with the summons and complaint, and thus Maryland first acquired jurisdiction.

*(5) Whether state or federal law will be applied:*

The action at issue is not a simple contract case that will best be decided in Georgia federal court as IOU asserts. The underlying fraud and criminal scheme impacts lenders other than IOU, and all centers on Maryland residents and a Maryland business. The extensive criminal investigation is taking place in

Maryland, as that is the location of the witnesses, the relevant property, and the bad actors. Indeed, most of the parties and actors in this matter have never been to and have no contacts with this State. Thus, this is simply not a case that should proceed in a Georgia Court; thus, abstention is warranted.

*(6) Adequacy of the state court to protect the parties' rights:*

As for the final factor, Maryland is the court that is in the best position to hear this case. As indicated above, the bad actors all reside in Maryland, as do all of the witnesses and victims. These parties will be able to be monitored, questioned, and controlled by the local court, much easier than a court over 600 miles away. Again, permitting this case to proceed in the Maryland court will not prejudice IOU. The Maryland action was filed prior to this action, already warranting a response from IOU. And most importantly, IOU admittedly conducts business and offers loans to Maryland citizens, availing themselves of Maryland law the jurisdiction of that Court.

**C.     An Injunction is Not Warranted.**

This Court has the inherent authority to control the disposition of the cases on its docket with consideration of time and effort for itself, for counsel, and for litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The individual and overarching factors of this case highlight that the Maryland court is the better forum

13

to adjudicate this dispute. For each of the factors that support abstention in this case, they also weigh against issuing an injunction against the Maryland court. There is no doubt that this Court has the broad authority to issue an injunction should it so choose, but the circumstances in this case strongly caution against such action.

Issuing an injunction would be contrary to justice, judicial economy, and common sense. The parties who are forced to defend the case in Georgia have never had any contacts with this State and have not availed themselves of Georgia's laws. On the contrary, IOU has taken full advantage of the State of Maryland, receives profits from that state, and transacts business there. All the witnesses reside in Maryland, all the relevant property exists in Maryland, and all pertinent events giving rise to this action occurred in the State of Maryland. Attempting to litigate this case from 600 miles away is not practical or efficient. Other than mere personal preference, IOU has offered no substantive rationale for this Court to find otherwise.

### III. CONCLUSION

For all of the foregoing reasons, as well as those set forth in Defendants' initial brief in support, [Doc. 8] Defendants Gary W. Larmore, Donna Lynn Larmore, and Shore Appliance Connection, Inc. respectfully request that this Court dismiss the above-styled action for lack or jurisdiction. In the alternative,

Defendants' request that this Court dismiss or stay this suit until a decision is reached in the action pending in Maryland.

This 28th day of July, 2020.

                                                WEATHINGTON, LLC

                                               */s/ Zachary H. Fuller*
                                               Paul E. Weathington
                                               Georgia Bar No. 743120
                                               Zachary H. Fuller
                                               Georgia Bar No. 641810

                                               *Attorneys for Defendants Gary*
                                               *Larmore, Donna Lynn Larmore,*
                                               *and Shore Appliance Connection, Inc.*

191 Peachtree Street, NE Suite 3900
Atlanta, GA 30303
Phone: 404-524-1600
Facsimile: 404-524-1610
pweathington@weathington.com
zfuller@weathington.com

## **CERTIFICATION AS TO FONT**

Counsel certifies that this pleading has been prepared in Times New Roman font in 14-point type.

This 28th day of July, 2020.

                                                          WEATHINGTON, LLC

                                                          */s/ Zachary H. Fuller*
Paul E. Weathington
Georgia Bar No. 743120
Zachary H. Fuller
Georgia Bar No. 641810

*Attorneys for Defendants Gary Larmore, Donna Lynn Larmore, and Shore Appliance Connection, Inc.*

191 Peachtree Street, NE Suite 3900
Atlanta, GA 30303
Phone: 404-524-1600
Facsimile: 404-524-1610
pweathington@weathington.com
zfuller@weathington.com

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing Reply Brief upon all parties to this matter electronically via CM/ECF and by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

Paul G. Wersant
3245 Peachtree Parkway
Suite D-245
Suwanee, Georgia 30024

This 28th day of July, 2020.

           WEATHINGTON, LLC

           */s/ Zachary H. Fuller*
           Paul E. Weathington
           Georgia Bar No. 743120
           Zachary H. Fuller
           Georgia Bar No. 641810

           *Attorneys for Defendants Gary Larmore, Donna Lynn Larmore, and Shore Appliance Connection, Inc.*

191 Peachtree Street, NE Suite 3900
Atlanta, GA 30303
Phone: 404-524-1600
Facsimile: 404-524-1610
pweathington@weathington.com
zfuller@weathington.com