IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IOU Central, Inc., d/b/a IOU
Financial, Inc.,

                Plaintiff,    Case No. 1:20-cv-2367-MLB

v.

Shore Appliance Connection Inc.,
a/k/a Shore Appliance and Bedding
Connection, et al.,

                Defendants.

_____/

## OPINION & ORDER

Plaintiff IOU Central, Inc., loaned money to Defendant Shore Appliance Connection Inc. ("Shore Appliance"), with a guarantee from Defendants Gary and Lynn Larmore (the owners of the company). Their son and company employee, Duane G. Larmore, obtained the loan. When Defendant Shore Appliance failed to pay, Plaintiff filed suit for breach of the loan agreement to recover its money. (Dkt. 1.) Defendants Gary and Lynn Larmore call their son a fraudster, saying he deceived them, forged their signatures, and stole the money from Plaintiff—thus relieving them

of any obligation to repay the loan. (Dkt. 8 at 1–5.) Shore Defendants[1] move to dismiss for improper venue or, in the alternative, stay the proceedings.[2] (*Id.* at 1.) The Court denies that motion.

## I.   Background

Defendants Gary and Lynn bought Defendant Shore Appliance, a retail seller of household appliances, bedding, and grilling equipment, in 1999. (Dkt. 8 at 2.) They hired their son, Defendant Duane, as an employee. (*Id.*) On December 30, 2019, Defendants Gary and Lynn, through Defendant Duane, applied for a commercial loan with Plaintiff. (Dkt. 1 ¶ 8.) They executed a promissory note for a principal sum of $166,500.00. (*Id.* ¶ 9.) The note includes a security agreement, pledging Defendant Shore Appliance's property, assets, and proceeds as collateral for the loan. (*Id.* ¶ 10.) Defendants Gary and Lynn executed guarantee agreements for the promissory note and security agreement. (*Id.* ¶ 11.) They, through Defendant Duane, also executed a debit agreement for Defendant Shore Appliance, whereby they agreed to debit loan payments

---

[1] The Court refers to Defendants Shore Appliance, Gary, and Lynn collectively as "Shore Defendants."
[2] On February 17, 2021, the Court held a hearing, during which it denied Shore Defendants' request to stay the proceedings. (Dkt. 37.) This Order thus only addresses their motion to dismiss for improper venue.

from their account to Plaintiff.  (*Id.* ¶ 13.)  Plaintiff alleges Defendants breached the agreements immediately after receipt of the funds.  (*Id.* ¶ 17.)

On June 3, 2020, Plaintiff sued, alleging seven counts: (1) declaratory and equitable relief, (2) breach of instruments, (3) breach of fiduciary duty, (4) quantum meruit/unjust enrichment, (5) equitable lien/mortgage, (6) constructive trust, and (7) attorneys' fees.  (Dkts. 1 at 10–17; 22 ¶ 11.)  On June 26, 2020, Shore Defendants moved to dismiss Plaintiff's complaint for improper venue.  (Dkt. 8 at 10–11.)  That same day, each of the Shore Defendants filed a crossclaim against Defendant Duane and a counterclaim against Plaintiff.  (Dkts. 9 at 17–32; 10 at 17–32; 11 at 17–32.)

## II.   Discussion

The parties appear to conflate "venue" and "forum."  Shore Defendants move to dismiss for improper *venue* (Dkt. 8 at 10), yet the parties, in their response and reply briefs, focus on the *forum* selection clause in the promissory note and guarantee agreements ("Instruments")

(Dkts. 22 at 6–11;[3] 25 at 7–8). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). While it is true that, in some contexts, the word "venue" is used synonymously with the term "forum," the main federal venue law, 28 U.S.C. § 1391, makes clear that venue must be determined in accordance with the criteria outlined in that statute. *Atl. Marine*, 571 U.S. at 56. Because the parties conflate the two concepts, the Court will address each.

### A.   Venue

Plaintiff argues Shore Defendants waived any objection to venue by filing counterclaims. (Dkt. 22 at 4.) Waiver is a threshold issue to be addressed first. Under Federal Rule of Civil Procedure 12(h), a defense of improper venue is waived unless it is included in the defendant's first

---

[3] Plaintiff requested and received an extension of time, up to and including July 13, 2020, to respond to Shore Defendants' motion. (Dkt. 20.) Plaintiff, however, filed its response a day late on July 14, 2020. (Dkt. 22.) Shore Defendants urge the Court to decline to consider the untimely brief. (Dkt. 25 at 2.) Because the response was only a day late and no one was prejudiced by the delay, the Court exercises its discretion to consider Plaintiff's response (Dkt. 22).

Rule 12 motion or in the answer to the complaint. Fed. R. Civ. P. 12(h). Thus, venue objections are waived absent a timely and sufficient objection by the defendant. *Manley v. Engram*, 755 F.2d 1463, 1468 (11th Cir. 1985). Here, Shore Defendants moved to dismiss based on improper venue on June 26, 2020. (Dkt. 8.) That same day, they also answered the complaint, and their answers each contained a counterclaim against Plaintiff. (Dkts. 9; 10; 11.) In other words, they first moved to dismiss because of improper venue and then, in separate filings, answered Plaintiff's complaint and asserted compulsory counterclaims. Because Shore Defendants raised the defense of improper venue in a timely Rule 12 motion before filing a responsive pleading, they did not waive their defense of improper venue.

    To the extent Plaintiff is arguing that, by filing counterclaims, Shore Defendants engaged in conduct amounting to a waiver, the Court rejects such an argument. Again, before filing their answers and counterclaims, Shore Defendants moved the Court to dismiss because of improper venue. Nothing prohibits a defendant challenging venue from answering the complaint. In that answer, the defendant is required to file any compulsory counterclaims. This does not amount to a waiver of

5

a venue objection. *See, e.g.*, *Spencer Franchise Servs. of Ga., Inc. v. WOW Café & Wingery Franchising Acct., LLC*, No. 5:12-CV-470, 2013 WL 1296507, at *2–3 (M.D. Ga. Mar. 26, 2013); 5C Wright & Miller, *Federal Practice and Procedure* § 1397 (3d ed. 2020) ("[T]he trend in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory. . . . This approach seems sound.").

Moving beyond waiver, Shore Defendants argue the applicable statute is the venue provision in the Fair Debt Collection Practices Act ("FDCPA"): 15 U.S.C. § 1692i. (Dkt. 8 at 10.) That is not correct. By its terms, § 1692i applies only to a "legal action on a debt against any consumer." *See* § 1692i(a). And the "FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997)). Legislative history confirms this reading of the statute: the Senate Report on the FDCPA expressly defines the scope of the Act as applying "only to debts *contracted* by *consumers* for personal, family,

6

or household purposes; it has no application to the collection of *commercial* accounts." Consumer Credit Protection Act, S. Rep. No. 95-382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695 (emphasis added). Here, the loan agreement is a commercial transaction, not a consumer transaction. The promissory note itself provides that the loan is "for business and commercial purposes and not for any agricultural, personal, family[,] or household purpose." (Dkt. 22-1 at 1.) The FDCPA is wholly inapplicable. *See, e.g.*, *Downing v. IOU Cent., Inc.*, No. 1:19-cv-929, 2019 WL 3502915, at *8 (N.D. Ga. May 29, 2019) (holding FDCPA inapplicable to commercial loan), *report and recommendation adopted by* 2020 WL 7409660 (N.D. Ga. Mar. 25, 2020).

Whether venue is proper is generally governed by 28 U.S.C. § 1391.[4] It provides that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." § 1391(a)(1). It also states that

---

[4] To be clear, § 1391 governs venue *generally*. There are other venue provisions that apply to specific types of cases (e.g., § 1400 governs proper venue for copyright and patent suits).

>[a] civil action may be brought in—
>
>>(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>>
>>(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>>
>>(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[5]

§ 1391(b). When venue is challenged, the court must decide whether the case falls within one of those three categories. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine*, 571 U.S. at 56. "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.*

---

[5] In § 1391(b), the first two subsections define the preferred judicial districts for venue in a typical case, while the third subsection provides a fallback option: If no other venue is proper, then venue will lie in "*any judicial district* in which any defendant is subject to the court's personal jurisdiction." *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56–57 (2013).

8

Venue is not proper in this district under § 1391(b)(1) because Defendants Gary, Lynn, and Duane do not reside in Georgia. For venue purposes, "a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled." § 1391(c)(1). The complaint alleges Defendants Gary, Lynn, and Duane are domiciled in Maryland. (Dkt. 1 ¶¶ 2–3.) An entity like Defendant Shore Appliance is deemed to reside, for venue purposes, "in any judicial district in which such defendant is subject to the court's personal jurisdiction." § 1391(c)(2). The Court, however, does not need to reach where Defendant Shore Appliance resides because, for § 1391(b)(1) to apply, all defendants must be residents of the State in which the district is located. Since at least three of the four defendants are not residents of Georgia, venue is not proper in this district under § 1391(b)(1).

Section 1391(b)(2) provides venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." This language "contemplates some cases in which venue will be proper in two or more districts." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). In analyzing whether events or omissions in a particular venue are a substantial part of a plaintiff's

9

claim, a court must focus on the relevant activities of the defendant. *Id.* at 1371–72 ("[T]he statute protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995))).

Shore Defendants argue *all* the underlying events occurred in Maryland. (Dkt. 8 at 10–11.) The Court disagrees. There are sufficient underlying events associated with this district to establish venue under § 1391(b)(2). According to the complaint,[6] Defendant Duane accessed the loan application through a website maintained at Plaintiff's office in Georgia, signed it in Maryland, and then returned it to Plaintiff in Georgia. (Dkt. 1 ¶ 8.) The same is true for the promissory note and guarantees. (*Id.* ¶¶ 9, 11.) Defendant Duane also executed a debit agreement, which mandated continuing contacts with Georgia because it authorized loan payments from Defendant Shore Appliance's account to

---

[6] In motions attacking venue as improper, the court must generally accept the allegations in the complaint as true. *See Katz v. Capps*, No. 1:17-CV-5365, 2018 WL 10605589, at *2 (N.D. Ga. Mar. 22, 2018); 5B Wright & Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2020) ("All well-pleaded allegations in the complaint bearing on the venue question generally are taken as true . . . .").

Plaintiff's office in Georgia. (*Id.* ¶ 13.) Any breach of the alleged agreements occurred in Maryland and the effects of a breach were felt in Georgia at Plaintiff's Kennesaw office. Thus, a substantial part of the events giving rise to the claim occurred here. Venue is proper in this district under § 1391(b)(2).

## B. Forum Selection Clause

Forum selection clauses are "presumptively valid and enforceable" absent a "'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). A forum selection clause will be invalidated only when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would

contravene public policy." *Id.* (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998)).

Plaintiff argues this Court is proper because the forum selection clause in the promissory note and guarantees ("Instruments") provide for a forum in Georgia. (Dkts. 22 at 6–11; 22-1 ¶ 24; 22-2 ¶ 11; 22-3 ¶ 11.) The promissory note, for example, provides "any and all claims, lawsuits[,] or disputes of any kind between the parties arising out of or relating to this Note . . . shall be instituted in and resolved by a state or federal court in Cobb County, Georgia." (Dkt. 22-1 ¶ 24.) Shore Defendants do not dispute that the Instruments contain forum selection clauses pointing to Georgia. Instead, Shore Defendants argue that, because their son allegedly forged their signatures on the Instruments to defraud Plaintiff, they never agreed to be bound by the forum selection clause in the first place. (Dkt. 25 at 2.)

In support of this argument, Shore Defendants rely exclusively on *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992), *abrogated by Larsen v. Citibank FSB*, 871 F.3d 1295 (11th Cir. 2017). (Dkt. 25 at 7–8.) *Chastain* dealt with an arbitration provision. "Under normal circumstances, an arbitration provision within a contract

admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Chastain*, 957 F.2d at 854. But, according to the *Chastain* Court,

> [t]he calculus changes when it is ***undisputed*** that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate. . . . Therefore, before sending [a dispute] to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

*Id.* (emphasis added in part and omitted in part). That analysis does not control here. First, *Chastain* concerned an arbitration clause, not a forum selection clause. Second, it is not undisputed that the party seeking to avoid enforcement of the forum selection clause has not signed the Instruments: Shore Defendants claim they never signed the Instruments because Defendant Duane forged their signatures (Dkts. 8 at 4; 25 at 2), but Plaintiff disputes that and alleges Shore Defendants signed the Instruments (Dkt. 1 ¶¶ 9, 11).

To the extent Shore Defendants are also seeking to apply the so-called "fraud exception" to the enforcement of forum selection clauses, the Court finds that exception inapplicable. The Supreme Court explained the fraud exception "does not mean that any time a dispute arising out of

13

a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means that a[] . . . forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract was the product of fraud* or coercion." *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (emphasis added). Here, there is no evidence to suggest the inclusion of the forum selection clause in the Instruments was the product of fraud.[7]

In sum, Shore Defendants have not made the required "strong showing" that enforcing the forum selection clause would be unfair or unreasonable under the circumstances. *Krenkel*, 579 F.3d at 1281. For that reason, the Court concludes the forum selection clause, which points to this district as the appropriate forum, is enforceable.

---

[7] *See, e.g.*, *Tradex Glob. Master Fund SPC Ltd. v. Palm Beach Cap. Mgmt., LLC*, No. 09-21622-CIV, 2010 WL 717686, at *6 (S.D. Fla. Mar. 1, 2010) ("We find that Plaintiffs' challenge to the forum selection clause is not separate and distinct from [their] challenge to the entire agreement. Therefore, because we can only set aside a forum selection clause if a party was fraudulently induced to include the clause itself in the agreement, we conclude that the forum selection clause in the Subscriber Agreement was not a product of fraud or overreaching.").

## C. Personal Jurisdiction

As Plaintiff notes (Dkt. 22 at 4), Shore Defendants do not mention personal jurisdiction in their motion to dismiss (Dkt. 8).[8] They do, however, raise the lack of personal jurisdiction as a ground for dismissal in their reply brief. (Dkt. 25 at 4.) The Eleventh Circuit has repeatedly emphasized that arguments raised for the first time in a reply brief are not properly before a reviewing court. *See United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002) (explaining it need not address issue raised for first time in reply brief); *United States v. Dicter*, 198 F.3d 1284,

---

[8] At the end of their motion, Shore Defendants conclude: "In sum, Georgia is an improper venue for this action, and this Court does not possess the requisite jurisdiction over Defendants Gary Larmore, Lynn Larmore, and Shore Appliance Connection, Inc. as set forth in 15 USCS § 1692i(a)(2) and 28 USCS § 1391." (Dkt. 8 at 11.) In the February 17, 2021 hearing, counsel for Shore Defendants argued this language asserts personal jurisdiction as a basis for dismissal. The Court disagrees. A passing reference to the word "jurisdiction" without more is not enough to raise an objection to personal jurisdiction. Furthermore, a reasonable reader would not view the sentence as raising a separate jurisdiction issue: the sentence comes at the end of their venue argument, the sentence begins with a discussion of venue, and the sentence ends with citations to venue statutes. A motion must state with particularity the grounds for seeking a court order. Fed. R. Civ. P. 7(b)(1); *see also Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) (per curiam) (finding the whole substance of defendant's motion was directed at venue—and not personal jurisdiction—so the defendant waived any objection to the court's personal jurisdiction).

15

1289 (11th Cir. 1999) (holding issue raised for first time in reply brief is waived); *United States v. Martinez*, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raised for first time in reply brief); *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (per curiam) (same). Moreover, under Federal Rule of Civil Procedure 12(h)(1), a party is deemed to have waived any objection to personal jurisdiction if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion. Fed. R. Civ. P. 12(h)(1). When Shore Defendants failed to raise its personal jurisdiction objection in its motion to dismiss (Dkt. 8), they waived any objection they might have had to the court's exercise of personal jurisdiction. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent." (citation omitted)); *see also Palmer*, 376 F.3d at 1259 ("Though venue and personal jurisdiction involve some of the same factors, a motion challenging venue is not effective to preserve the issue of personal jurisdiction."). This Court has personal jurisdiction over Shore Defendants.

### III. Conclusion

The Court **DENIES** Shore Defendants' Motion to Dismiss (Dkt. 8). And pursuant to the February 17, 2021 hearing, the Court **GRANTS** Plaintiff leave to file an amended complaint and **GRANTS** Shore Defendants leave to file amended answers and amended counterclaims. No later than April 1, 2021, Plaintiff shall file its amended complaint. Shore Defendants shall respond to the amended complaint in accordance with the timeline provided by the Federal Rules of Civil Procedure. Shore Defendants may also reassert their counterclaims in their answers to Plaintiff's amended complaint.

**SO ORDERED** this 18th day of March, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE